BRIDGET McCABE, Respondent, v. IRA D. BRAINARD, Appellant.

*Negligence — a servant thrown to the ground from the step of a wagon, resulting either from a defect in the wagon or from the negligence of a co-employee in starting it — a proper charge in such a case.*

In an action based upon the alleged negligence of a hopgrower by whom the plaintiff was employed to tie the hops, it appeared by the contract of employment that the defendant was to carry the tiers to and from his yards, for which purpose he had provided a wagon having seats at the sides and steps at the end; and that, as the plaintiff was alighting from this wagon she fell, and, the horses starting, she was dragged several feet and injured. There was a dispute as to whether the lower step gave way or whether the plaintiff was thrown to the ground because the driver permitted his horse to start while she was alighting.

*Held,* that the defendant was entitled to have the jury distinctly instructed that if the accident was caused by the negligence of the driver in permitting his horse to start while the plaintiff was alighting, she could not recover, as this would be the negligence of a co-employee; and, further, that if the accident was caused by the weakness of the step and the negligence of the driver, the defendant was not liable unless the jury found that the injury would not have been sustained but for the weakness of the step.

WARD, J., dissented.

APPEAL by the defendant, Ira D. Brainard, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 6th day of February, 1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 25th day of February, 1896, denying the defendant's motion for a new trial made upon the minutes.

*L. P. Fuess,* for the appellant.

*L. D. Edwards,* for the respondent.

FOLLETT, J.:

This action was begun March 4, 1895, to recover damages for a personal injury, caused, it is alleged, by the negligence of the defendant and of his employees.

The defendant is a grower of hops, having yards in the vicinity of Waterville, N. Y., and in May, 1893, the plaintiff was one of several persons engaged in tying hops in one of the defendant's yards.

It was part of the contract of hiring that the defendant should carry the tiers from their residences to the yards in the morning, and from the yards to their residences in the evening. For the purpose of carrying the laborers the defendant had a one-horse lumber wagon, with seats on both sides, and at the rear end of the wagon were two steps fastened to the under side of the box and to the endboard, to enable the employees to enter and leave the wagon.

On the conclusion of work on the 27th of May, 1893, several tiers, and among them the plaintiff, entered this wagon by these steps at the yard and were taken to their homes. This wagon stopped in front of the plaintiff's home to permit her to alight, and on leaving the wagon she fell and was injured.

The plaintiff alleges in her complaint that the steps were insecurely

fastened, and that, as she attempted to alight, the lower step gave way and she was thrown, the horse started, and she was dragged several feet on the ground and was injured.

On the trial two principal questions of fact were litigated : (1) Whether the lower step gave way ; (2) whether she was thrown to the ground by the driver permitting the horse to start while plaintiff was in the act of alighting.

If the accident were caused by the act of the driver the negligence was that of plaintiff's fellow-servant, and she cannot recover.

As before stated, the plaintiff alleged in her verified complaint that the horse started and dragged her several feet on the ground ; but on the trial she withdrew from this position and testified that, so far as she knew, the horse did not start. The driver, who had been discharged from the defendant's service, testified that the horse did not move, but two of the plaintiff's witnesses, Bridget Landers and Lena Finn, and Clayton M. McLean, one of the defendant's witnesses, testified that the horse started or moved forward as the plaintiff was in the act of alighting, and she was thrown to the ground. These witnesses were in the wagon at the time, and were in a situation to know what the fact was.

The court, in delivering its charge, correctly instructed the jury that in case they found that the accident was caused by the negligence of the driver of the wagon, the plaintiff could not recover.

After the conclusion of the charge, the counsel preferred various requests, and the counsel for the plaintiff said : " There was something in the charge which I understood to be something in this sense, that if the horse started while the plaintiff was riding, that this plaintiff cannot recover. In pretty near that—" The Court: "I did not so intend to charge." Mr. Searle : " Then in order that our position may be clearly expressed, I ask your honor to charge in that respect in this way, that if the plaintiff's foot, when she was alighting, was upon the lower step, and the steps gave way by reason of a defect, which reasonable inspection would have disclosed, then the fact that there was a movement of the horse which contributed to the breaking, to the injury, defendant would not thereby be relieved." The Court: "I so charge." To this instruction the defendant excepted. Mr. Searle : "In reference to some of the requests of counsel that the negligence of a co-employee con-

tributing to an injury, where the injury would have happened by reason of some defect of machinery or appliance which reasonable care would have disclosed, does not relieve the defendant of negligence." The Court: "* * * I cannot see where that question is in this case." Mr. Searle: "Well, it is only to this point. It may be found by the jury that the woman's foot was upon the step at the time there was a movement of the wagon, and that the two movements, that is, the giving way of the step and the movement of the horse, may together have caused or contributed to the injury." The Court: "I do not know, and you do not know whether the jury — you do not know what the jury will find, but they may find that in her falling out or getting out, that the push or the movement of the horse's sent the wagon ahead. I won't charge that." Again, the counsel for the defendant requested the court to charge: "That the plaintiff cannot recover in this action if the negligence which was the proximate cause of the accident is found to be the negligence of a co-employee." The Court: "I refuse to charge in that way."

I think the jury was not properly and clearly instructed in respect to the rule of the non-liability of an employer for an accident to one employee caused by the negligence of a co-employee. The jury should have been distinctly instructed that if the accident was caused by the negligence of the driver in permitting the horse to start while the plaintiff was in the act of alighting, she could not recover, and that, if the accident were caused by the weakness of the step and the negligence of the driver, the defendant was not liable unless they found that the injury would not have been sustained but for the weakness of the step.

The judgment and order should be reversed, and a new trial granted, with costs to abide event.

ADAMS and GREEN, JJ., concurred; WARD, J., dissented.

HARDIN, P. J.:

I concur upon the last ground stated in the opinion of FOLLETT, J. (*Ring* v. *City of Cohoes*, 77 N. Y. 83; *Durkin* v. *Sharp*, 88 id. 225; *Seeley* v. *N. Y. C. & H. R. R. R. Co.*, 102 id. 719; *Dobbins* v. *Brown*, 119 id. 188; *Grant* v. *Canal & Railroad Company*, 133 id. 657.)

WARD, J. (dissenting):

The action was to recover damages for negligence alleged against the defendant, which resulted in personal injuries to the plaintiff. The plaintiff and defendant resided in the village of Waterville, Oneida county. The defendant was engaged in hop raising, banking and other business. He had a farm, situated about a mile from the village, upon which he raised hops, and in the spring of the year he employed quite a number of persons to tie the hop vines upon the poles, who were called hop tiers. He had wagons built for the purpose of carrying these hop tiers from the village to his farm to perform their work and to return them home. A few days prior to May 27, 1893, the defendant, through his foreman and general manager of the hop business upon this farm and in connection therewith, employed the plaintiff at a dollar a day to tie hops, and agreed to carry her each morning to her work and return her in the evening in a wagon to be provided. The defendant had a one-horse wagon, used for that purpose, with a wagon box and with three seats upon it, two seats running lengthwise on either side of the box and a third seat crossing in front. The side seats were held in place by crosspieces on the top of each end of the wagon box. To get in and out of the wagon two steps were provided in the rear; the first being an extension of the bottom boards of the wagon and on a level with them, and the second step being about nineteen inches below the first step and seventeen or eighteen inches from the ground, and this lower step was secured to the wagon, the plaintiff claimed, by three braces, one at each end of the lower step, passing up and connecting with the end of the bottom boards that formed the first step. Another brace, passing from the center of the lower step, passed up and connected and passed through the bottom boards inside of the wagon box. The defendant claimed that this lower step was supported by five braces — three connected with the wagon about as described above, and two outside braces passing up from the rear end of the lower step and connecting with the top of the hindboard of the wagon.

On the 27th of May, 1893, the plaintiff's testimony tended to show that she went to work, got into this wagon in the morning, went to the farm and returned in the same wagon with other

employees of the defendant, and, upon reaching her home in the village, attempted to alight from the wagon, and, in doing so, when her foot struck the lower step it gave way under her weight, and she was precipitated to the ground and severely injured in one of her limbs; that she used proper care in attempting to alight, and that her injury was caused by the giving way of the step and her falling as stated.

Several witnesses gave testimony tending to show that one of the braces gave way to this lower step; that there were no washers under the nut or head of the brace bolt on top of the bottom boards; that the place where the bolt went through was worn and the bolt pulled through, thus causing the step to give way, and that the wood of the bottom board where the braces connected was worn and dozy. It was only one thickness of board, about one inch in thickness; that the bolt got loose and the step swayed, and the driver of the wagon testified that he called the attention of the defendant's foreman to the condition of the step prior to the hitching up of the wagon on the evening of the accident and before the plaintiff was injured. The plaintiff's witnesses sustained her claim that there were but three braces to the step; that there was no endboard in the hind part of the wagon at the time of the accident, and that the horse attached to the wagon did not start so as to cause the accident.

The defendant's witnesses gave evidence as to the five braces; that the wagon was in sound condition; that the step was secure and safe; and that the accident was caused by the starting of the horse as the plaintiff was about to alight from the wagon, throwing her headlong, and that she sustained her injuries from that cause.

The evidence upon the principal question in the case is irreconcilable, but the jury have settled it in favor of the plaintiff. The evidence was sufficient to go to the jury as to the plaintiff's case. Exceptions were taken upon the trial, and the facts bearing upon them will be stated in the opinion of the court.

The defendant's foreman gave testimony upon the trial, in which he was supported by another witness, that the hop wagon, as was customary, had been laid up the previous winter under cover, taken apart, and on the twenty-fourth of May (three days before the accident) he put the wagon together for the purpose of using it in this

business; that he put on this step five braces and washers on the bolts which connected the step with the bottom boards, and, according to his evidence, prepared the wagon in all respects to be safely used to carry the hop tiers to and from their work.

The court in charging the jury properly charged it as to the duty devolving upon the plaintiff to establish the negligence of the defendant and the freedom from negligence of the plaintiff, reviewing to some extent the facts, and upon the close of the charge the defendant's counsel requested the court to charge the jury that Welch in putting the wagon together and putting on the steps and preparing it for use, was discharging the duties of a fellow-servant with the plaintiff in the execution of the work, and did not represent the defendant in that regard. This was refused, the court saying: "I will hold in this case that this man Welch was foreman, and he was the defendant for the purposes of this case upon the question of furnishing a reasonably safe and suitable vehicle and appliances attached, to convey this plaintiff under the contract." There was an exception to this charge and to the refusal to charge as requested.

The appellant's counsel earnestly contends that this was error. It appeared, without contradiction in the case, that the defendant gave no personal attention to this business of hiring these laborers and operating this hop farm, but left that entirely to Welch. Welch also had charge of this wagon; there do not appear to have been any repairs made upon the wagon; the defendant had owned it and used it in this business for a couple of years.

The defendant purchased the wagon some two years before the accident, and then it was a second-hand wagon; and upon these facts, undisputed, and the testimony of Welch above referred to, the court held as above stated. It was the duty of the defendant to furnish a reasonably safe conveyance under his contract with the plaintiff to take her to and from her work; this was a primary duty; and as he devolved that duty upon Welch, Welch represented him in putting this wagon together in condition for use and in providing it, thus put together and arranged, for the plaintiff's use.

If Welch had notice of the defective condition of this step and its connections with the wagon, that was notice to the defendant; it was a question for the jury whether such notice was received by

Welch, and they have found with the plaintiff. It would not be profitable to review the great number of authorities upon this subject; they fill volumes of our law reports and it will not be attempted.

The cases cited by the learned counsel for the appellant are not pertinent; they are mainly cases holding that in the detail of the work of the master, where one employee is injured by the negligence of a co-employee, the master is not liable. This exception is not well taken.

Later on, the defendant's counsel requested the court to charge the jury "that the plaintiff cannot recover in this action if the negligence which was the proximate cause of the accident is found to be the negligence of a co-employee." The Court: "I refuse to charge in that way." This request was not accompanied by any statement of facts or of any evidence to which the request should apply. The court was, in effect, requested to state an abstract proposition of law.

In the points before us the appellant's counsel claims that this request had reference to the action of the driver of the wagon, who was a co-employee of the plaintiff, and that if he had been careless in the management of the horse so that the starting of the horse had caused the accident, then the plaintiff could not recover, as the negligence of the driver would have been the negligence of the fellow-servant.

Had the learned counsel made that point to the trial court, and thereby shown the pertinency of the proposition of law that he requested to have charged, and had his request been refused, the exception would have brought a very serious question before us. As it is, we cannot consider it here.

An exception arose upon the trial upon a question asked by the plaintiff's attorney of her physician who had attended her after her injury. The injury was to the knee; and the doctor in explaining the character of the injury, was inquired of about the ligaments of the knee and what office they performed. It is not perceived what error there was in this, and, if error, how it could have injured the defendant. The doctor had described a serious injury to the knee; he had found the small bone in the leg about three inches from the knee broken (the fibula); it was a transverse break; he treated it

and gave a history of the case; he discovered difficulty in her walking as a result. He was asked what would cause this difficulty; he explained, and then he said, from his knowledge of the injury and from the statements that he had received from his patient, that in cold weather she felt increased pain in the leg, he could form an opinion as to what it was due to. He was then asked, in effect, to say what it was due to, to which there was an objection that he was not authorized to express an opinion, and he answered that the pains were due to rheumatic conditions which are extremely common in all cases of bruises or breaking of bones. Then he was asked: "What do you say, doctor, as to the continuance of these conditions after the injury, as to the probability of their continuance?"

This was objected to as incompetent, etc., and was overruled with an exception to the ruling, and the doctor answered that they would probably continue a long while; that the age of a person makes a difference; the older the patient the longer the pains are likely to last, for younger people outgrow these things; the younger they are the less years they have down to a child.

The defendant claims this was error under the ruling in *Strohm* v. *N. Y., L. E. & W. R. R. Co.* (96 N. Y. 305).

In that case it was held that, to authorize evidence as to apprehended consequences, they must be such as in the ordinary course of nature are reasonably certain to ensue; consequences which are contingent, speculative or merely possible are not proper to be considered in estimating the damages and may not be proved.

Here the witness stated upon reasonable premises his conclusions as to the probable results of this injury. His conclusions were not based upon mere speculations as was the evidence condemned in the case cited. We find no reversible error in the reception of this testimony.

The remaining point to be considered is that the plaintiff was, as a matter of law, guilty of contributory negligence; that if the step was in the condition in which her witnesses testified it was, she should have seen it as she got in upon the step in the morning, and had an opportunity to do so.

She testifies that she did not notice the condition of the step; that when she got in, in the morning, she put her hands upon the

sides of the wagon and had no difficulty in helping herself in. This might have occurred, and still the step be loose and defective; she was attending to getting in the wagon and not to inspecting the steps; she had the right to rely upon the assurance that the defendant had given her that the step was reasonably safe. The question of contributory negligence was for the jury and they have found with the plaintiff.

The trial court, upon the question of inspection, charged that the defendant was only required to make an ordinary inspection of the wagon. This was quite as favorable for the defendant as he could ask.

Upon the whole case I find no reversible error, and the judgment and order should be affirmed.

Judgment and order reversed and new trial ordered, with costs to abide the event.